IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARY SUE FLYNT, Individually,**

    Plaintiff,

v.                                                                                           **No. 13cv633 JCH/RHS**

**CITY OF ALBUQUERQUE MAYOR BERRY (Officially);
CITY OF ALBUQUERQUE PLANNING DEPARTMENT
(Officially); CITY OF ALBUQUERQUE CITY COUNCIL
(Officially); CITY OF ALBUQUERQUE LAND USE PLANNING
and ZONING COMMITTEE  (Officially); CITY OF
ALBUQUERQUE LEGAL DEPARTMENT (Officially);
CITY OF ALBUQUERQUE CITY ATTORNEY KEVIN
CURRAN (Officially); STATE OF NEW MEXICO DEPARTMENT
OF TRANSPORTATION (Officially); NMDOT PHIL GALLEGOS
(Officially); SUN NORTH ESTATES HOMEOWNERS ASSOCIATION
BOARD OF DIRECTORS (Officially); RON BOHANNON OF
TIERRA WEST CONSULTANT'S; CORONADO PARTNERSHIP
CORONADO VILLAGE MOBILE HOME PARK; COUNTY
OF BERNALILLO COUNTY COMMISSIONERS (Officially);
CITY OF ALBUQUERQUE EMPLOYEE'S JANE DOE'S 1&2 (Officially)
STATE OF NEW MEXICO GOVERNOR SUSANNA MARTINEZ
(Officially); CITY OF ALBUQUERQUE MUNICIPAL DEVELOPMENT
DEPARTMENT (Officially); CITY OF ALBUQUERQUE MUNICIPAL
DEVELOPMENT DEPARTMENT DIRECTOR MICHAEL RIORDAN
 (Officially); DEFENDANT ALBUQUERQUE PUBLISHING COMPANY,**

    **Defendants**

## MEMORANDUM OPINION AND ORDER
## DISMISSING COMPLAINT

**THIS MATTER** comes before the Court on pro-se Plaintiff Mary Sue Flynt's *Application to Proceed in District Court without Prepayment of Costs or Fees* (hereinafter called "motion to proceed IFP"), filed July 10, 2013 (Doc. 2), and on the Court's concomitant obligation "to review the affidavit and screen her case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't of the Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005).   Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as

determining whether the action "is frivolous or malicious, . . . fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e).  "[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312.  The Court must "dismiss the case" if it determines that any of the conditions in § 1915(e)(2)(B) exist.  *See* § 1915(e)(2); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n.5 (10th Cir. 2006) (noting that dismissals under § 1915(e)(2)(A) & (B) are mandatory).

    **I.**    **Flynt does not appear to meet the IFP requirements.**

IFP status should be granted only if a plaintiff demonstrates that she "cannot because of [her] poverty pay or give security for the costs . . . and still be able to provide [her]self and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).  Flynt, who is 60 years old with one dependent, is recently unemployed but formerly earned $1250/month and receives $750/month in child support.  *See* Doc. 2 at 2.  She does not indicate that she cannot work or find other employment, and she has 15 years of education, including "a degree in General Studies . . . [an] Associate in Accounting from a Business College, Drafting Certificate, and forty-seven years in the Customer Relations field."  *See id.* at 5; Compl. at 4.  Flynt drives a 2012 car, for which she makes payments of $338/month and pays insurance of $120/month, and she also owns a 1999 Chevrolet.  *See id.* at 3-4.  She does not list her home or property that is the subject of this lawsuit as an asset, but she should have, and she states she makes payments of $500/month on that property, which apparently includes utilities. *See id.*  Flynt spends $350/month on food; $75/month for clothing; and $150/month for transportation costs.  *See id.*  She recently paid $350 to an attorney for consultation.  *See id.* at 5.

Because Flynt is likely able to soon find work to supplement the $750/month she receives in child support and also has assets she could sell to pay for litigation, the Court concludes that Flynt has failed to show that she cannot, because of her poverty, provide herself and her dependent with the necessities of life and pay the filing fee.  *See Adkins*, 335 U.S. at 339.  Her motion to proceed IFP will be denied and her Complaint should be dismissed on that ground alone.  *See* § 1915(e)(2)(A); *Trujillo*, 465 F.3d at 1217 n. 5.  As set forth below, the Complaint must also be dismissed for more substantive reasons.

## II.     APPLICABLE LEGAL STANDARDS

The Tenth Circuit Court of Appeals has set forth the following standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure.

> *Bell Atlantic Corp. v. Twombly* [] reject[ed] the "no set of facts" language of *Conley* [ *v. Gibson*, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007).  Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
>> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S. Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Court applies this same standard in its review under § 1915(e)(2) to determine whether Flynt has stated a cognizable federal claim.  *See Kay v. Bemis*, 500 F.3d 1214, 1217

(10th Cir. 2007).  The Court will accept as true Flynt's allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to her.  *See id.*  But the Court "will not supply additional facts, [or] construct a legal theory for [a] plaintiff that assumes facts that have not been pleaded."  *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

The courts take a two-step approach in determining whether a complaint states a claim upon which relief may be granted.  First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them.  *Ashcroft v. Iqbal*, 556 U.S.662, 680 (2009).  Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681; *see id.* at 686 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss.  But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted).

**III.  ALLEGATIONS IN THE COMPLAINT.**

Flynt seeks $1 billion dollars in monetary damages and declaratory relief[1].  *See* Compl. at 34-35.  Flynt is attempting, under 42 U.S.C. § 1983 and what she calls a "Wheel Conspiracy Theory,[2]" to sue (i) city, county, and state governments and employees; (ii) Coronado Village,

---

[1]  Although the Complaint also mentions prospective-injunctive relief in one sentence, nothing else in the Complaint indicates that Flynt is seeking injunctive relief.

[2]  A "wheel conspiracy" is a type of conspiracy theory used in criminal law.  "In a wagon wheel conspiracy, 'a single person or group (the 'hub') deal[s] individually with two or more other persons or groups (the 'spokes').'  Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 6.5, at 551 (2d ed. 1986).  Separate spokes meeting at a common center constitute a wheel conspiracy only if those spokes are enclosed by a 'rim.'  *Kotteakos v. United States*, 328 U.S. 750, 755, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946)."  *United States v. Evans*,  970 F.2d 663, 668 (10th Cir.

the mobile-home park that is adjacent to Sun North Estates, the manufactured-home community where Flynt lives; (iii) her own Sun North Estates HOA; (iv) Ron Bohannon, who was a private consultant for Coronado Village; and (v) the Albuquerque Publishing Company, which published the Albuquerque Tribune.  She contends that Albuquerque's 2010 North 1-25 Sector Development Plan erroneously indicated that Sun North Estates is a mobile-home development and that she was denied her right to receive individual notice of public meetings and a hearing involving redevelopment and zoning plans that resulted in the 2010 passage of the General-Public-Funded project for the Paseo/1-25 Interchange development bond.  *See* Compl. at 2-3.  She alleges violation of her "civil rights of procedural due process." *Id.* at 5.

Flynt alleges that the City's Land Use Planning and Zoning Department were "negligent" in failing to provide her with "legal Notification" regarding a February 2010 City Council hearing at which Resolution 11-11 and Floor Amendment R-09-263 were passed.  Floor Amendment R-09-263 amended the 1986 North 1-25 Sector Redevelopment Plan and adopted the 2010 North 1-25 Sector Redevelopment Plan.  *See id.* at 6-8, 20.  At the February 2010 hearing, the City Council approved an "upsize zoning change" permitting the construction of a "super 'box' store." *Id.* at 6.  Flynt contends that the sponsor of R-09-263 was given an incorrect land-use zoning description indicating that both Sun North Estates[3] and Coronado Village are zoned SUI-MH Park and that this incorrect description was used in determining whether the City

---

1992). The "rim" establishes that the different actors had a single, unified criminal purpose of which they were all aware, as opposed to a situation in which several actors engage in the same kind of criminal conduct, but are not all acting to achieve a common purpose that benefits all of them at the same time.  *See Kotteakos*, 328 U.S. at 755.

[3]  Flynt contends that Sun North Estates was originally legally described as a Mobile Home Community in 1983, when it was created, but that all property owners modified their mobile homes by 1986 so that they could be "converted" to "manufactured homes" and the properties could then be reclassified as "real property."  Compl. at 9.

should adopt R-09-263.  *See id.* at 8-9.  She contends that, after it passed, R-09-263 was recorded in the Clerk's office.  *See id.*

But according to Flynt, Coronado Village successfully appealed from the 2010 passage of R 11-11 and R-09-263, and after the issue was remanded by the state courts, in January 2012 the City's Land Use Planning and Development Committee("LUPDC") held another hearing to reconsider OC 11-32/R 11-11 to "revise SU2/MUD zoning" regarding Coronado Village's 1986 "land-use district overlay map."  *Id.* at 19.  According to Flynt, approval of this resolution would permit an amendment of the 2010 North 1-25 Sector Development Plan and allow the City to acquire and develop 16 acres belonging to Coronado Village for use in the Paseo/1-25 Interchange development plan.  *See id.*  At the January 2012 hearing, Defendant Keith Curran, the City Attorney, testified that legal notice had been given to land owners within 300 feet of Coronado Village, and Sun North Estate's Board of Directors, several homeowners, and Flynt attended the hearing.  *See id.* at 20, 26, 33.  In fact, Flynt testified at the January, 2012 hearing, complaining that she had not been given proper legal notice of the 2012 hearing; asking whether a traffic-impact study had been done regarding the effects of R 11-11 on the Sun North Estates neighborhood; and asserting that the proposed access road to connect San Mateo from where it dead-ended at Wilshire to Alameda would "have to take property from Sun North Estates."  *Id.* at 26-27.  Defendant Ron Bohannon testified that neither R 11-11 nor the 2010 Comprehensive plan "was designed to include taking property from Sun North Estates."  *Id.* at 27.  The LUPDC held another hearing on March 14, 2012, which Flynt also attended.  *See id.*  R 11-11 was eventually adopted by the City Council and "signed into legislative law" on May 29, 2012, and the City purchased 16 acres from Coronado Village to develop the Paseo/I-25 Interchange project.  *Id.* at 30-31.

Flynt concludes that a "wheel conspiracy" between the city and county departments and employees, Bohannon, and Coronado Village existed to unlawfully benefit Coronado Village and that the Defendants conspired to keep her and other Sun North Estate homeowners from knowing about the hearings. *Id.* at 29, 31. She concludes that the Albuquerque Tribune violated her constitutional rights by "sway[ing] the opinion of the public to vote for the Bond issue of $50 million dollars for the Paseo/I-25 Interchange." *Id.* at 32. She concludes that her HOA's Board of Directors violated her constitutional rights when it failed to give her notice of the hearings after it had "receiv[ed] the Official Notification for the Sun North Estates Community of hearings for the North 1-25 Sector Development Plan or . . . Resolution 11-11." *Id.* She also complains that the HOA improperly "failed to seek legal advice" and "purchased land within Sun North Estates with the intent to profit when the City 'makes a reasonable offer' for the taking of our Property, for redevelopment." *Id.* at 33.

**IV. ANALYSIS**

"The irreducible constitutional minimum of standing requires plaintiffs to show (1) that they have suffered an injury in fact, (2) that the injury is fairly traceable to the challenged action of the defendant, and (3) that the injury is likely to be redressed by a favorable decision." *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1155 (10th Cir. 2006) (internal quotation marks omitted). Although the right to due process associated with an actual deprivation of a property interest is absolute, "the Constitution does not protect procedure for procedure's sake." *Rector v. City & County of Denver*, 348 F.3d 935, 943 (10th Cir. 2003). Because the decision resulting from the 2010 hearing was judicially overturned, Flynt can not shown an injury in fact caused by lack of notice of the 2010 hearing because "due process would not have affected the outcome, thus the plaintiff sustained no injury through the denial of due process." *Denny v.*

*Richardson*, 234 Fed. App'x 862, 866, 2007 WL 1454420, *3 (10th Cir. 2007). Flynt has, therefore, failed to demonstrate standing to challenge the propriety of the 2010 hearing.

As noted, the Court should not accept legal conclusions as true for determining whether a complaint states a cognizable claim. Flynt erroneously theorizes that the 2010 recording of the R-09-263 Amendment that was based on an allegedly incorrect zoning description "changed" the "legal real estate description" of her property, thereby "indicating" that she is "no longer a [a] Real Property homeowner" and devaluing the property. *Id.* at 9-10. But no facts demonstrate that the 2010 erroneous description actually damaged Flynt's property rights in any way. Flynt admits that the County Assessor's office "still classifie[s her property] as Real Property," Compl. at 10, so the zoning has not been legally changed and her property could not been devalued. Further, the Complaint also alleges that Coronado Village's subsequent successful appeal was based on the fact that *only* Coronado Village was excluded from the "overlay zone which added Provisions governing land use options" because Coronado Village's property was zoned SUI-MH. Compl. at 21. The Complaint states that, although the zoning for Sun North Estates was improperly described as a mobile-home park, Sun North Estates was *not* excluded in R-09-263 from taking advantage of the protective Provisions permitting Sun North Estates to "have the option to follow their underlying zoning or the allowed uses and regulations set out by the Land Use District, 2010 Plan." *Id.* at 21-22. Therefore, the Complaint indicates that Sun North Estates actually maintained whatever zoning it had in 2010, and Sun North Estates could continue to follow its proper zoning description.

Because Flynt has cited the R-09-263 and the 2010 North I-25 Sector Plan, the Court has taken judicial notice of the official documents, which are available on the internet at www.cabq.gov/planning/documents/copy_of_NI25SDPfinal042010.pdf, The pdf includes the

documents adopting R-09-263 by the City Council on Feb.17, 2010 and a copy of the Plan and overlays describing the different properties. It describes the many public meetings that were extensively publicly advertized held before the Plan was developed. In the Plan, Sun North Estates is referred to as a "manufactured homes subdivision," and not as a mobile-home park, and the Plan refers to input received from the Sun North Estates Neighborhood Association. *See* 2010 North I-25 Sector Plan at 12, i. None of the figures attached to the plan indicate that Sun North Estates is zoned as a mobile home park. And the Plan clearly states:

> This Plan does **NOT** change the existing zoning for properties within the plan area boundaries. All properties will have the SU-2 prefix to show that they are within this sector plan's boundaries and control. The Plan expands upon the uses allowed under current zoning through the use of a Land Use District Overlay, described in Chapter 3. When developing your property, you will have the choice of either developing in accordance to the uses allowed under your existing zoning or developing in accordance to the uses allowed in the Land Use District Overlay.

*Id.* at 3. Flynt has misrepresented the clear effect of R-09-263 on her property, and has failed to establish an injury in fact arising from the 2010 recording of R-09-263. She lacks standing to challenge its recording.

In addition, there are no allegations that the City has ever adopted and recorded a specific resolution actually changing *Sun North Estate's* zoning description. Instead, Flynt complains that, after notice was given to the Sun-North-Estates homeowners through their HOA in 2012, the City changed *Coronado Village's* zoning from SU1-MH to SU2-MUD. No allegations suggest that this change in zoning negatively or unlawfully affects Flynt's property. *See* Compl. at 33-34. And even if it did, Flynt concedes that she did, in fact, get notice of the 2012 hearings and testified at them, thus she has failed to state a claim for violation of her rights to procedural due process. Further, there are no facts indicating why, if a zoning-description overlay *had* correctly stated that Sun North Estates was a manufactured-home community and not a mobile-

home park when the description was given to R-09-263's sponsor in 2010, the amendment would not have passed. In other words, there is nothing to indicate that Sun North Estates' characterization as a mobile-home park or a manufactured-housing community affected in any way the City's decision to modify the Paseo/I-25 interchange to improve traffic flow and safety. Flynt has failed to state a claim for violation of her civil rights under § 1983.

Even if she had suffered an injury to her property interests, Flynt's § 1983 claims for money damages against all of the state entities and employees in their official capacities are barred in federal court by the Eleventh Amendment. It is well-established that "[n]either the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes, nor a state official who acts in his or her official capacity, is a 'person' within the meaning of § 1983." *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

Flynt's objection to Albuquerque Publishing Company's exercise of free speech in deciding to support the bond issue is frivolous. Similarly, her § 1983 claim against the Sun North Estates Board of Directors for negligence in allegedly failing to pass the notice of the various hearings on to her or for exercising its authority to purchase property within the community in anticipation of later selling it to the City is frivolous for several reasons, including that the Board of Directors is clearly not a state actor. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (stating that, to invoke the Court's subject-matter jurisdiction under § 1983, a plaintiff must allege facts showing that "some person has deprived him of a federally protected right;" and "that the person who has deprived him of that right acted under color of state or territorial law"); *Mehdipour v. Matthews*, No. 10-6073, 386 Fed. App'x 775, 778 n.3, 2010 WL 2748802,

*3 n.3 (10th Cir. July 13, 2010) (unpublished) (citing cases noting that, when there is no demonstration of state action, there is no basis for civil-rights jurisdiction ).

There are no allegations regarding Albuquerque's Municipal Development Department and its Director Michael Riordan, thus Flynt has failed to state a cognizable federal claim against them..

Besides an award of $ 1 billion dollars in damages, Flynt seeks an order for declaratory relief.  She unintelligibly alleges that

> Defendant(s) Mayor Berry's [sic] personally sponsored and negotiated between . . . Governor Susana Martinez, the transfer of the Paseo/I-25 interchange for funding and approval of zone change's [sic], the State of New Mexico had no legal jurisdiction over and the transfer back to the State New Mexico Department of Transportation to proceed, without any City of Albuquerque and County of Bernalillo oversite.

Compl. at 38.  She seeks an order holding that "all negotiation's [sic] the Defendant Mayor RJ Berry or his legal staff were involved and resulted in an illegal continuance of his ABQ Plan, Plaintiff's alleged Wheel in her Wheel Conspiracy, be null and void." *Id.*  Because Flynt can not show injury in fact arising from Mayor Berry's "negotiations" with the Governor, whatever they may have been, she has no standing to seek this declaratory relief, and that claim will be dismissed.

**IT IS ORDERED THAT** Flynt's motion to proceed IFP [Doc. 2] is DENIED and that her Complaint is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE